08CV4599

JUDGE DER-YEGHIAYAN

MAGISTRATE JUDGE NOLAN

PH

# EXHIBIT

# A

#29365

JN:bll    7n-376

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT, LAW DIVISION

MICHELL REED, Special Administrator )
of the Estate of TERRI REED, Deceased )
                         )
       Plaintiff,           )
                         )
       v.               )
                         )
DAVID ALLEN CLAUD, M.D., )
PHYSICIANS & SURGEONS FOR )
WOMEN, INC., an Ohio Corporation, )
FAMILY CHRISTIAN HEALTH )
CENTER, an Illinois Corporation, )
CHICAGO METROPOLITAN )
OBSTETRICIANS & GYNECOLOGISTS, )
LTD, an Illinois Corporation, )
NEW BEGINNINGS, an Indiana )
Corporation, Q-RAD, INC., an Illinois )
Corporation, MEDCENTRIX, INC., )
f/k/a HEALTH DIRECTIONS, INC., )
an Illinois Corporation, and THE INGALLS )
MEMORIAL HOSPITAL, an Illinois )
Corporation, )
                         )
       Defendants.      )
                         )
_____ )
                         )
JAMIE HORN, M.D., )
                         )
    Respondent-in-Discovery,   )

Case No.

JURY DEMAND

2008L006370
CALENDAR/ROOM C
TIME 00:00
Medical Malpractice

08 JUN 11 PM 12:08
CIRCUIT COURT OF COOK
COUNTY, ILLINOIS
LAW DIVISION
DOROTHY BROWN
CLERK

## COMPLAINT AT LAW

Introduction:

1.      On and before June 18, 2006, the defendant, THE INGALLS MEMORIAL

HOSPITAL, (hereinafter "INGALLS") was a hospital corporation organized and existing

pursuant to the laws of the State of Illinois and it employed nurses, physicians, technicians,

radiologists, administrators and other healthcare professionals comprising a single organized medical staff within its hospital facility located in Cook County, Illinois.

2.  On and before June 18, 2006, and in connection with the medical care provided to plaintiff, MICHELL REED, the defendant, DAVID CLAUDE, M.D., acted as the actual and/or apparent agent of INGALLS.

3.  On and before June 18, 2006, the defendant, DAVID CLAUDE, M.D., was a physician licensed to practice medicine within the State of Illinois, who held himself out to members of the public, including the plaintiff, MICHELL REED, as having specialized experience and expertise in the medical specialty of obstetrics and gynecology.

4.  On and before June 18, 2006, the respondent-in-discovery, JAMIE HORN, M.D., was a physician licensed to practice medicine within the State of Illinois, who held herself out to members of the public, including the plaintiff, MICHELL REED, as having specialized experience and expertise in the medical specialty of obstetrics and gynecology.

5.  On and before June 18, 2006, and in connection with the medical care rendered to plaintiff, MICHELL REED, respondent-in-discovery, JAMIE HORN, M.D., acted as the actual and/or apparent agent of INGALLS.

6.  On and before June 18, 2006, the defendant, PHYSICIANS & SURGEONS FOR WOMEN, INC., was a medical corporation organized and existing pursuant to the laws of the State of Ohio and was authorized to do business within the State of Illinois and which at all times relevant herein provided medical services in Cook County, Illinois, by and through its actual and apparent agents, including but not limited to defendant, DAVID CLAUDE, M.D., who provided health services to patients, including plaintiff, MICHELL REED.

7. On and before June 18, 2006, and in connection with the medical care provided to the plaintiff, MICHELLE REED, defendant, DAVID CLAUD, M.D., acted as the actual and/or apparent agent of PHYSICIANS & SURGEONS FOR WOMEN, INC.

8. On and before June 18, 2006, the defendant, FAMILY CHRISTIAN HEALTH CENTER, was a medical corporation organized and existing pursuant to the laws of the State of Illinois, which at all times herein relevant provided medical services in Cook County, Illinois, by and through its actual and apparent agents, including but not limited to defendant, DAVID CLAUD, M.D., who provided health services to patients, including the plaintiff, MICHELL REED.

9. On and before June 18, 2006, and in connection with the medical care provided to the plaintiff, MICHELL REED, defendant, DAVID CLAUD, M.D., acted as the actual and/or apparent agent of FAMILY CHRISTIAN HEALTH CENTER.

10. On and before June 18, 2006, the defendant, CHICAGO METROPOLITAN OBSTETRICIANS & GYNECOLOGISTS, LTD, was a medical corporation organized and existing pursuant to the laws of the State of Illinois which at all times herein relevant provided medical services in Cook County, Illinois, by and through its actual and apparent agents, including but not limited to DAVID CLAUD, M.D., who provided health services to patients, including the plaintiff, MICHELL REED.

11. On and before June 18, 2006, and in connection with the medical care provided the plaintiff, MICHELL REED, defendant, DAVID CLAUD, M.D., acted as the actual and/or apparent agent of CHICAGO METROPOLITAN OBSTETRICIANS & GYNECOLOGISTS, LTD.

12. On and before June 18, 2006, the defendant, NEW BEGINNINGS, was a medical corporation organized and existing pursuant to the laws of the State of Indiana and was authorized to do business in the State of Illinois and which at all times herein relevant provided medical services in Cook County, Illinois, by and through its actual and apparent agents, including but not limited to the defendant, DAVID CLAUD, M.D., who provided health services to patients, including the plaintiff, MICHELL REED.

13. On and before June 18, 2006, and in connection with the medical care provided to the plaintiff, MICHELL REED, the defendant, DAVID CLAUD, M.D., acted as the actual and/or apparent agent of the defendant, NEW BEGINNINGS.

14. On and before June 18, 2006, the defendant, MEDCENTREX, INC., f/k/a HEALTH DIRECTIONS, INC., was a medical corporation organized and existing pursuant to the laws of the State of Illinois, and at all times herein relevant provided medical services in Cook County, Illinois, and through its actual and apparent agents, including but not limited to DAVID CLAUD, M.D., who provided health services to patients, including the plaintiff, MICHELL REED.

15. On and before June 18, 2006, and in connection with the medical care provided to the plaintiff, MICHELL REED, defendant, DAVID CLAUD, M.D., acted as the actual and/or apparent agent of MEDCENTREX, INC., f/k/a HEALTH DIRECTIONS, INC.

16. On and before June 18, 2006, the defendant, Q-RAD, INC., was a medical corporation organized and existing pursuant to the laws of the State of Illinois and at all times herein relevant, provided medical services in Cook County, Illinois, by and through its actual and apparent agents, including but not limited to the defendant, DAVID CLAUD, M.D., who

-4-

provided health services to patients, including the plaintiff, MICHELL REED.

17.  On and before June 18, 2006, and in connection with the medical care provided to plaintiff, MICHELL REED, defendant, DAVID CLAUD, M.D., acted as the actual and/or apparent agent of Q-RAD, INC.

18.  Plaintiff, MICHELL REED, is a resident of Cook County, Illinois and is the mother of TERRI REED, deceased.

19.  Plaintiff, MICHELL REED, during the course of her pregnancy with TERRI REED, received medical care and treatment at defendant, INGALLS, for her pre-natal visits.

20.  INGALLS, by and through its agents and employees, determined that plaintiff, MICHELL REED, was at risk for maternal/fetal injury secondary to pre-term labor and she was given magnesium therapy during her pre-natal visits at INGALLS MEMORIAL HOSPITAL.

21.  Based on the ultrasound, plaintiff, MICHELL REED, had an estimated date of delivery of July 7, 2006.

22.  Plaintiff, MICHELL REED, was seen and evaluated on several occasions at the defendant, INGALLS, by and through its agents and employees for complaints of contractions, nausea and vomiting during her pregnancy.

23.  On or about June 9, 2006, while receiving pre-natal care at INGALLS, plaintiff, MICHELL REED, was crying due to concern for her unborn child at which time the nursing staff of INGALLS, assured MICHELL REED that they would monitor her pregnancy and alert a physician if any problem should arise.

24.  Plaintiff, MICHELL REED, was admitted to the obstetrical unit at INGALLS MEMORIAL HOSPITAL on June 13, 2006, with complaints of nausea and vomiting.

-5-

25.    On June 13, 2006, defendant, INGALLS, provided care and treatment by and
through its agents and employees, including respondent-in-discovery, JAMIE HORN, M.D., to
MICHELL REED.

26.    During the June 13, 2006, admission at INGALLS MEMORIAL HOSPITAL, it
was determined that MICHELL REED was at 36 & 4/7 weeks gestation and the plan of care
included a c-section if MICHELL REED were in labor.

27.    On June 15, 2006, at approximately 9:00 a.m., INGALLS, by and through its
agents and employees, decided that MICHELL REED was in latent labor and she was discharged
from the hospital.

28.    On June 18, 2006, plaintiff, MICHELL REED, was admitted to INGALLS
MEMORIAL HOSPITAL at approximately 6:00 a.m. in early labor.

29.    Upon admission, plaintiff, MICHELL REED, had a pain rating of a "10" in her
abdomen.

30.    Later in the morning, fetal heart rate decelerations were noted in the chart.

31.    At approximately 1:54 in the afternoon, MICHELL REED complained of
significant pain and her membranes were ruptured artificially.

32.    The nurses at INGALLS MEMORIAL HOSPITAL noted a large amount of
vaginal bleeding with small clots and at this time MICHELL REED was 4 cms. dilated.

33.    In addition, the fetal monitor tracing had characteristic findings of hyper-
contractility with contractions occurring every 1.5 minutes and repetitive late decelerations. This
pattern persisted and gradually worsened over the course of several hours with repetitive late
decelerations, hyper-contractility and continued significant vaginal bleeding.

34.    Although MICHELL REED's pulse was in the 90's at the time of the admission, her pulse rate increased to the 150's.

35.    During the afternoon, the nurses at INGALLS MEMORIAL HOSPITAL recorded that they had to help MICHELL REED breathe and that she had continued vaginal bleeding which required the change of bedding due to excessive blood staining.

36.    Despite the signs of abruption placentae, there was no intervention and labor was allowed to continue.

37.    Also, during her stay at INGALLS MEMORIAL HOSPITAL, there was a significant change in the baseline fetal heart rate from 125 beats per minute on admission to 150 beats per minute by 4:00 p.m. that afternoon.

38.    By 6:00 p.m., MICHELL REED, complained of an urge to push and the nurse's recorded repetitive late decelerations.

39.    MICHELL REED's child, TERRI REED, developed profound bradycardia from which she never recovered.

40.    Plaintiff, MICHELL REED, was taken to the operating room for an emergency c-section at approximately 7:19 p.m. and delivered her child, TERRI REED, stillborn at approximately 7:33 p.m.

41.    A core blood gas from TERRI REED revealed a Ph. of 6.7.

42.    At the time of the c-section, the operative note provides that the placenta was delivered spontaneously as a result of abruptio placentae.

-7-

*Count I - Wrongful Death , DAVID ALLEN CLAUD, M.D., PHYSICIANS & SURGEONS FOR WOMEN, INC., an Ohio Corporation, FAMILY CHRISTIAN HEALTH, CENTER, an Illinois Corporation, CHICAGO METROPOLITAN OBSTETRICIANS & GYNECOLOGISTS, LTD, an Illinois Corporation, NEW BEGINNINGS, an Indiana Corporation, Q-RAD, INC., an Illinois Corporation, MEDCENTRIX, INC., f/k/a HEALTH DIRECTIONS, INC., an Illinois Corporation, and THE INGALLS MEMORIAL HOSPITAL, an Illinois Corporation*

1-42. Plaintiff reasserts and realleges paragraphs one (1) through (42) of the "Introduction" as paragraphs one (1) through forty two (42) of this Count I as if fully set forth herein.

43. During the morning of the admission on June 18, 2006, defendant, DAVID CLAUD, M.D., began to provide care and treatment to MICHELL REED and her child, TERRI REED.

44. During the course of the June 18, 2006 admission, DAVID CLAUD, M.D., received reports regarding MICHELL REED and her unborn child, TERRI REED, and he provided bedside care and treatment.

45. During the course of her June 18, 2006 admission, defendant, DAVID CLAUD, M.D., was aware that plaintiff, MICHELL REED, had intense pain, excessive vaginal bleeding, excessive uterine activity, repetitive late decelerations and signs of fetal compromise.

46. Defendant, DAVID CLAUD, M.D. was aware of the concerning signs for abruptio placentae for several hours prior to any intervention or attempt to deliver plaintiff, MICHELL REED's child, TERRI REED.

47. On June 18, 2006, the defendant, DAVID CLAUD, M.D., individually, and the defendants, PHYSICIANS & SURGEONS FOR WOMEN, INC., FAMILY CHRISTIAN HEALTH CENTER, CHICAGO METROPOLITAN OBSTETRICIANS& GYNECOLOGISTS,

LTD, an Illinois Corporation, NEW BEGINNINGS, Q-RAD, INC., and MEDCENTRIX, INC.,

f/k/a HEALTH DIRECTIONS, INC., and each of them, by and through their actual and apparent

agent, DAVID CLAUD, M.D., were negligent in one or more of the following respects:

    a.    Failed to perform a c-section in a timely manner;

    b.    Failed to adequately assess the well-being of plaintiff's decedent, TERRI REED;

    c.    Failed to recognize fetal distress in a timely manner and expedite delivery before irreparable fetal injury and death;

    d.    Failed to provide MICHELL REED with appropriate medical care;

    e.    Failed to properly investigate the source of the excessive vaginal bleeding; and

    f.    Failed to provide TERRI REED with appropriate medical care.

48.    As a proximate result of one or more of the above negligent acts and/or omissions,

on the part of the defendant, DAVID CLAUD, M.D., individually, and on the part of the

defendants, PHYSICIANS & SURGEONS FOR WOMEN, INC., FAMILY CHRISTIAN

HEALTH CENTER, CHICAGO METROPOLITAN OBSTETRICIANS & GYNECOLOGISTS,

LTD, an Illinois Corporation, NEW BEGINNINGS, Q-RAD, INC., and MEDCENTRIX, INC.,

f/k/a HEALTH DIRECTIONS, INC., and each of them, by and through their actual and/or

apparent agent, DAVID CLAUD, M.D., plaintiff's decedent, TERRI REED, suffered injuries

which resulted in her stillbirth and death on June 18, 2006.

49.    On June 18, 2006, the plaintiff's decedent, TERRI REED, left surviving

her as her only heirs and next of kin, her parents, Michell Reed and Gregory Thomas, as well as

her sibling, Jordonnay Scott, each of whom suffered a pecuniary loss and a loss of TERRI

REED's society and companionship as a proximate result of her death.

50.     The plaintiff, MICHELLE REED, is the duly appointed Administrator of the

Estate of TERRI REED, deceased, by virtue of an Order entered in the Circuit Court of Cook

County, Illinois and she brings this action pursuant to the authority of said appointment as well as

the Wrongful Death Act., ch. 740 ILCS Section 180 et seq.

51.     Attached hereto and made a part hereof is an Affidavit and Medical Report

submitted pursuant to Section 2-622(1) of the Illinois Code of Civil Procedure.

WHEREFORE, the plaintiff, MICHELLE REED, Special Administrator of the Estate of

TERRI REED, deceased, demands judgment against the defendants, DAVID CLAUD, M.D.,

PHYSICIANS & SURGEONS FOR WOMEN, INC., FAMILY CHRISTIAN HEALTH

CENTER, CHICAGO METROPOLITAN OBSTETRICIANS & GYNECOLOGISTS,

LTD, an Illinois Corporation, NEW BEGINNINGS, Q-RAD, INC., and MEDCENTRIX, INC.,

f/k/a HEALTH DIRECTIONS, INC., and each of them,  in a sum in excess of the jurisdictional

limit of FIFTY THOUSAND AND 00/100 ($50,000.00) dollars, plus costs.

## COUNT II - WRONGFUL DEATH (V. INGALLS MEMORIAL HOSPITAL, BY AND THROUGH ITS AGENT, DAVID CLAUD, M.D.)

1-46.   Plaintiff reasserts and realleges paragraphs one (1) through (46) of Count I as

paragraphs one (1) through forty-six (46) of this Count II as if fully set forth herein.

47.     On June 18, 2006, the defendant, INGALLS, by and through its actual and/or

apparent agent, DAVID CLAUD, M.D., was negligent in one or more of the following respects:

a.      Failed to perform a c-section in a timely manner;

b.      Failed to adequately assess the well-being of plaintiff's decedent, TERRI REED;

c.      Failed to recognize fetal distress in a timely manner and expedite delivery before

-10-

irreparable fetal injury and death;

d. Failed to provide MICHELL REED with appropriate medical care;

e. Failed to properly investigate the source of the excessive vaginal bleeding; and

f. Failed to provide TERRI REED with appropriate medical care.

48. As a proximate result of one or more of the above negligent acts and/or omissions, on the part of the defendant, INGALLS, by and through its actual and/or apparent agent, DAVID CLAUD, M.D., plaintiff's decedent, TERRI REED, suffered injuries which resulted in her stillbirth and death on June 18, 2006.

49. On June 18, 2006, the plaintiff's decedent, TERRI REED, left surviving her as her only heirs and next of kin, her parents, Michell Reed and Gregory Thomas, as well as her sibling, Jordonnay Scott, each of whom suffered a pecuniary loss and a loss of TERRI REED's society and companionship as a proximate result of her death.

50. The plaintiff, MICHELL REED, is the duly appointed Administrator of the Estate of TERRI REED, deceased, by virtue of an Order entered in the Circuit Court of Cook County, Illinois and she brings this action pursuant to the authority of said appointment as well as the Wrongful Death Act., ch. 740 ILCS Section 180 et seq.

51. Attached hereto and made a part hereof is an Affidavit and Medical Report submitted pursuant to Section 2-622(1) of the Illinois Code of Civil Procedure.

WHEREFORE, the plaintiff, MICHELL REED, Special Administrator of the Estate of TERRI REED, deceased, demands judgment against the defendants, THE INGALLS MEMORIAL HOSPITAL, by and through its actual and/or apparent agent, DAVID CLAUD, M.D. and against each of them in a sum in excess of the jurisdictional limit of FIFTY

-11-

THOUSAND AND 00/100 ($50,000.00) dollars, plus costs.

### COUNT III - WRONGFUL DEATH (V. THE INGALLS MEMORIAL HOSPITAL)

1-44    Plaintiff reasserts and realleges paragraphs one (1) through (44) of the

"Introduction" as  paragraphs one (1) through forty-four (44) of this Count III as if fully set forth

herein.

45.    Defendant, DAVID CLAUD, M.D., was never notified by the nursing staff at

INGALLS MEMORIAL HOSPITAL about a concerning change in the fetal heart rate during the

second stage of MICHELL REED's labor.

46.    The nurses at INGALLS MEMORIAL HOSPITAL providing care and treatment

to MICHELL REED were aware that she had excessive vaginal bleeding and knew there were

signs of fetal compromise over a period of several hours.

47.    The nurses at INGALLS MEMORIAL HOSPITAL further knew that despite

excessive bleeding by MICHELL REED and signs of fetal compromise, neither DAVID

CLAUD, M.D. nor any other physician ordered a c-section for MICHELL REED over a period of

several hours.

48.    Nurses have a duty to act as patient advocates.

49.    A chain of command within nursing and administration should be in place at

INGALLS MEMORIAL HOSPITAL to act as a safety net for patients such as MICHELL REED

and her child TERRI REED.

50.    The nurses at INGALLS MEMORIAL HOSPITAL who provided care and

treatment to MICHELL REED and her child TERRI REED failed to initiate an appropriate chain

of command so that MICHELL REED could receive a timely c-section.

-12-

51. On June 18, 2006, defendant, INGALLS, by and through its agents and and employees, including its nurses and administrators were negligent in one or more of the following respects:

     a. Failed to notify DAVID CLAUD, M.D. about a concerning change in the status of the fetal heart rate for the second stage of MICHELL REED's labor;

     b. Failed to have an appropriate chain of command in place within nursing and administration to order the timely c-section for MICHELL REED; or

     c. Failed to invoke the chain of command within nursing and administration for a timely c-section to be performed on MICHELL REED.

52. As a proximate cause of one or more of the aforesaid negligent acts and/or omissions on the part of the defendant, INGALLS, by and through its agents and employees, including its nurses and administrators, plaintiff's decedent, TERRI REED, suffered injuries and damages which resulted in her still birth and death on June 18, 2006.

53. On June 18, 2006, the plaintiff's decedent, TERRI REED, left surviving her as her only heirs and next of kin, her parents, Michell Reed and Gregory Thomas, as well as her sibling, Jordonnay Scott, each of whom suffered a pecuniary loss and a loss of TERRI REED's society and companionship as a proximate result of her death.

54. The plaintiff, MICHELL REED, is the duly appointed Administrator of the Estate of TERRI REED, deceased, by virtue of an Order entered in the Circuit Court of Cook County, Illinois and she brings this action pursuant to the authority of said appointment as well as the Wrongful Death Act., ch. 740 ILCS Section 180 et seq.

55. Attached hereto and made a part hereof is an Affidavit and Medical Report submitted pursuant to Section 2-622(1) of the Illinois Code of Civil Procedure.

-13-

WHEREFORE, the plaintiff, MICHELL REED, Special Administrator of the Estate of

TERRI REED, deceased, demands judgment against the defendant, THE INGALLS

MEMORIAL HOSPITAL, in a sum in excess of the jurisdictional limit of FIFTY THOUSAND

AND 00/100 ($50,000.00) dollars, plus costs.


_____
Attorney for Plaintiff


Michael P. Cogan, Esq.
James P. Navarre, Esq.
COGAN & MCNABOLA, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, Illinois 60601
(312) 629-2900

JN:bll    7n-376                                        #29365

## IN THE CIRCUIT COURT OF COOK COUNTY
## COUNTY DEPARTMENT, LAW DIVISION

|  |  |  |
|---|---|---|
| MICHELL REED, Special Administrator of the Estate of TERRI REED, Deceased | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | JURY DEMAND |
| DAVID ALLEN CLAUD, M.D., PHYSICIANS & SURGEONS FOR WOMEN, INC., an Ohio Corporation, FAMILY CHRISTIAN HEALTH CENTER, an Illinois Corporation, CHICAGO METROPOLITAN OBSTETRICIANS & GYNECOLOGISTS, LTD, an Illinois Corporation, NEW BEGINNINGS, an Indiana Corporation, Q-RAD, INC., an Illinois Corporation, MEDCENTRIX, INC., f/k/a HEALTH DIRECTIONS, INC., an Illinois Corporation, and THE INGALLS MEMORIAL HOSPITAL, an Illinois Corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| ------------------------------------------- | ) | |
| JAMIE HORN, M.D., | ) ) | |
| Respondent-in-Discovery, | ) | |

## AFFIDAVIT

I, Jim P. Navarre, the affiant on oath, state:

The total of money damages sought in this matter does exceed $50,000.

SUBSCRIBED AND SWORN TO
Before me this 10th day of June, 2008.

NOTARY PUBLIC

OFFICIAL SEAL
GREGORY T. MARSHALL
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 8-16-2010

Michael P. Cogan, Esq.
Jim P. Navarre, Esq.
**COGAN & McNABOLA, P.C.**
55 W. Wacker Drive, 9th Floor
Chicago, IL  60601
312/629-2900

JN:bll    7n-376                                                #29365

## IN THE CIRCUIT COURT OF COOK COUNTY
## COUNTY DEPARTMENT, LAW DIVISION

MICHELL REED, Special Administrator )
of the Estate of TERRI REED, Deceased . )
                                        )
            Plaintiff,                  )        Case No.
                                        )
        v.                              )        JURY DEMAND
                                        )
DAVID ALLEN CLAUD, M.D.,                )
PHYSICIANS & SURGEONS FOR               )
WOMEN, INC., an Ohio Corporation,       )
FAMILY CHRISTIAN HEALTH                 )
CENTER, an Illinois Corporation,        )
CHICAGO METROPOLITAN                    )
OBSTETRICIANS& GYNECOLOGISTS, )
LTD, an Illinois Corporation,           )
NEW BEGINNINGS, an Indiana              )
Corporation, Q-RAD, INC., an Illinois   )
Corporation, MEDCENTRIX, INC.,          )
f/k/a HEALTH DIRECTIONS, INC.,          )
an Illinois Corporation, and THE INGALLS )
MEMORIAL HOSPITAL, an Illinois          )
Corporation,                            )
                                        )
            Defendants.                 )
------------------------------------------------ )
JAMIE HORN, M.D.,                       )
                                        )
        Respondent-in-Discovery,        )

## <u>AFFIDAVIT</u>

1.    Your affiant has consulted with and reviewed the facts of the case with a health

professional who the affiant reasonably believes is knowledgeable in the relevant issues involved

in this particular action, practices within the last six years in the same area of health care or

medicine that is at issue in this particular action and is qualified by experience in the subject of

this case.

2.     Your affiant concludes, based on consulting with the above-described individual, that there is a reasonable and meritorious cause for the filing of this action.

3.     The reviewing health professional has determined in a written report, after a review of the medical records described in said report that there is a reasonable and meritorious cause for the filing of such action.

4.     The reviewing health professional is licensed to practice medicine in Illinois, is board certified in obstetrics and gynecology and a board certified in maternal-fetal medicine specialist.

FURTHER YOUR AFFIANT SAITH NOT.

Jim P. Navarre

SUBSCRIBED and SWORN before
me this 10th day of June, 2008.

NOTARY PUBLIC

OFFICIAL SEAL
GREGORY T. MARSHALL
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 8-16-2010

June 2, 2008


Michael P. Cogan
Cogan & McNabola, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601

        **RE: Reed v. Ingalls**


Dear Mr. Cogan:


In response to your request, I am offering the following report subject to review of the materials
sent to me on the above captioned patient. The material included medical records from Ingalls
Memorial Hospital in Harvey, Illinois from a hospitalization in June 2006 which were sent in
three volumes, including fetal monitor hear rate tracings and the medical record.

From the review of the records, the following facts are evident:

1.    The patient is a 31 year old gravida 2 para 1 who was admitted to the hospital at roughly
      6:00 a.m. on June 18, 2006 in early labor at 36.5 weeks gestation.

2.    The patient's labor was characterized in the early phases by significant pain requiring
      epidural anesthesia to be administered at 10:00 a.m. as well as narcotic analgesia.

3.    Late the same morning, fetal heart rate decelerations were noted but they recovered
      spontaneously.

4.    By the afternoon, at roughly 1:54 p.m., the patient complained of significant pain. Her
      membranes were ruptured artificially. The nurse records "a large amount of moderate red
      vaginal bleeding with small clots noted." At the same time, the patient was 4 cm dilated.
      Importantly, at the same time, the fetal monitor tracing has characteristic findings of
      hypercontractility with contractions occurring every 1.5 minutes and repetitive late
      decelerations. This pattern persisted and gradually worsened with repetitive late
      decelerations, hypercontractility and continued significant vaginal bleeding. Notably, the
      patient's pulse, which was in the 90's at the same time of admission, had increased to the
      150's. Throughout the afternoon, the nurse's notes are replete with comments about to
      help that patient breathe through the pain, continued vaginal bleeding and even entries
      related to changing of the bedding due to excessive blood staining. In spite of those
      obvious signs of abruptio placentae, there was no intervention at hand and the labor was
      allowed to continue. By 6:00 p.m., the patient complained of an urge to push. The nurse
      records repetitive late decelerations and still no specific intervention is implemented.
      Also during this interval, it is noted that the fetal heart rate tracing, aside from the

repetitive late decelerations which evolved into variable with a late component, there is a significant change in the baseline fetal heart rate from roughly 125 beats per minute on admissions to 150 beats per minute by 4:00 p.m. that afternoon. Ultimately, at roughly 7:00 p.m. that evening, the fetus was unable to tolerate the ongoing insult any longer and developed profound bradycardia which it never recovered. The patient was taken to the Operating Room for emergency cesarean section at 7:19 p.m. and delivered a stillborn infant at 7:33 p.m. that evening. Cord blood gas form the stillborn revealed a pH of 6.7.

5.     At the time of the cesarean section, the operative notes state that the placenta delivered spontaneously as a result of abruptio placentae. Additionally, there was positive Couvelaire uterus, again consistent with not only abruptio placentae, but with one resulting from larger duration.

As a physician licensed in the State of Illinois, and as a Board Certified Obstetrician/Gynecologist and Board Certified Maternal-Fetal Medicine specialist, it is my opinion that there is cause to proceed with medical negligence action in this case. Specifically, the record is replete with hours of classic signs of abruptio placentae. Those signs include pain, excessive vaginal bleeding, excessive uterine act6ivity, repetitive late decelerations and signs of fetal compromise. As many hours as there were that elapsed, somewhere between three and four depending on where you start the clock, no intervention or attempt to deliver the baby was made. Clearly, by the time that the decision was made, it was already to late and the baby was subsequently stillborn. Furthermore, there is absolutely no question in my mind that had this baby been delivered earlier, it would have been alive and well and had no problem.

The record also annotates that the attending physician, Dr. Claud, was both notified and involved with the care of this patient throughout the day. I sense that the nursing staff clearly appreciated that this was a very abnormal situation as evidenced by the specific entries made in the nursing notes and their ongoing efforts to contact Dr. Claud and intervene on this patient's behalf. It is somewhat troubling that while those initial efforts to get the responsible attending physician to evaluate the patient were successful, no further efforts on behalf of the nursing staff were made when the first line of help for the patient was unresponsive. This raises some questions as to whether or not the appropriate chain of command within nursing and nursing administration was in place to further act as a safety net for this patient.

In conclusion, I strongly urge you to proceed within medical legal action in this matter I believe there is reasonable and meritorious cause for an action against Dr. Claud and Ingalls Hospital as well as its nurses and administration.

# EXHIBIT

# B

## CERTIFICATION

Pursuant to the provisions of 42 U.S.C. § 233, and by virtue of the authority delegated to me by the Attorney General under 28 C.F.R. § 15.4 and through the United States Attorney for the Northern District of Illinois, I hereby certify that I have read the complaint in *Michell Reed, Special Administrator of the Estate of Terri Reed, Deceased v. David Allen Claud, M.D., et al.,* No. 2008 L 006370 (Circuit Court of Cook County, Illinois), and all attachments thereto. On the basis of the information now available, I find that at the relevant times, the Family Christian Health Center was a private entity receiving grant money from the Public Health Service pursuant to 42 U.S.C. § 233. Further, I certify that David Allen Claud, M.D., was acting within the scope of his employment at the Family Christian Health Center with respect to the incidents referred to in the complaint. Accordingly, for purposes of the above case, the Family Christian Health Center and David Allen Claud, M.D., are deemed to be employees of the United States pursuant to 42 U.S.C. § 233, for Federal Tort Claims Act purposes only.

_Thomas Walsh_
THOMAS P. WALSH
Chief, Civil Division
Office of the United States Attorney
    for the Northern District of Illinois

Date: July 21, 2008